1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CAROLE RUIKKA,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. CV-12-3112-JTR

ORDER  GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

      BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF
No. 20, 26.  Attorney D. James Tree represents Carole Ruikka (Plaintiff); Special
Assistant United States Attorney Daphne Banay represents the Commissioner of
Social Security (Defendant).  The parties have consented to proceed before a
magistrate judge.  ECF No. 3.  After reviewing the administrative record and briefs
filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment
and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

      On January 28, 2005, Plaintiff filed an application for a period of disability
and disability insurance benefits, alleging disability beginning May 1, 2004.  Tr.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

130.  Plaintiff has the burden of establishing disability on or prior to the expiration of her insured status (or date of last insured), in this case, September 30, 2005.  Tr. 130; *see Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.1999).

Plaintiff's application was denied initially and on reconsideration.  (Tr. 55-57; 60-69).  After a hearing on May 12, 2008, in the Dalles, Oregon, the ALJ issued a decision dated July 21, 2008, finding Plaintiff not disabled.  Tr. 14-26; 508-39.   The Appeals Council declined review, and Plaintiff filed an action in District Court.  ECF No. 1.  In response, Defendant moved for remand,[1] and the District Court ordered remand for further administrative action.  Tr. 561-64.   As a result, the Appeals Council vacated the decision and remanded with specific instructions for the ALJ on remand.  Tr. 558-60.  The Appeals Council noted that in the first opinion, the ALJ failed to provide "adequate evaluation[s]" of: (1) the nature and severity of Plaintiff's obesity; (2) the opinion from treating neurosurgeon Jordi X. Kellogg, M.D.; (3) Plaintiff's subjective complaints; and (4) lay witness testimony from Plaintiff's husband Michael Ruikka.  Tr. 558-60.

On remand, the Appeals Council ordered the ALJ to: (1) "obtain additional evidence concerning claimant's obesity and other impairments in order to complete the administrative record…";  (2) "further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations…"; (3) "further evaluate the other source opinions…"; (4) "give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record…"; and (5) "if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's

---

[1]The Defendant moved for remand on the basis that "the claim file and recording of the administrative hearing held on May 23, 2012, cannot be located."  ECF No. 7 at 2.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

occupational base….” Tr. 559-60.

The ALJ held the second hearing on May 23, 2012.   Tr. 727-42.   Plaintiff appeared via video, was represented by counsel, and testified.  Tr. 730-42. Vocational expert Gary Jesky was present, but the ALJ did not call him to testify. On June 26, 2012, the ALJ again found Plaintiff was not disabled and denied benefits Tr. 543-57.  The Appeals Council declined review.   Tr. 6-8.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the second administrative hearing, Plaintiff was 47 years old, five feet five inches tall, and she testified that she weighed approximately 189 pounds.  Tr. 738-39.  She lived with her husband on a 20-acre farm, and had eight horses, four of which were miniatures.  Tr. 524-25. They also had several Chihuahua dogs.  Tr. 525; 740.

Plaintiff’s past work included operating a daycare, receptionist, shipping and receiving clerk, and real estate agent.  Tr. 146; 535-36.  In her application, Plaintiff reported that she experienced pain in her low back, disks and “back bone,” and as a result she could not sit or stand for long periods.  Tr. 137-38.  Plaintiff stated that she stopped working because the pain became “very intense” and some of her pain medication left her unable to work.   Tr. 138.   Plaintiff also stated she suffered “very frequent migraines.”  Tr. 138.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court’s order upholding the Commissioner’s denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

1
2
3
4
5
6
7

Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

8
9
10
11
12

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

13
14
15
16
17
18
19
20
21
22
23
24

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

25
26
27
28

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

At step one, ALJ Atkins found that Plaintiff had not engaged in substantial gainful activity from May 1, 2004, through her date of last insured, September 30, 2005. Tr. 546. At step two, he found Plaintiff had the severe impairments of "obesity and chronic back pain status post lumbar surgery." Tr. 546. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 548. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except she could "only occasionally engage in stooping, bending, crouching, crawling, kneeling, or balancing. She was unable to engage in climbing other than ramps or stairs." Tr. 548. At step four, the ALJ found that Plaintiff is able to perform past relevant work as a receptionist. Tr. 554. The ALJ found that the testimony of vocational expert Kathryn Heatherly from the first hearing classified receptionist as a semi-skilled (SVP 4) work requiring sedentary exertion. Tr. 554. The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. Tr. 554.

**ISSUES**

Plaintiff contends that the ALJ erred by: (1) improperly rejecting the medical opinion evidence; (2) finding Plaintiff was not credible; (3) improperly rejecting lay witness testimony; and (4) failing to follow the Appellate Council and District Court's Order on remand.[2]   ECF No. 20 at 3.

**A.   Medical Opinions**

Plaintiff argues that the ALJ erred by rejecting the medical opinions of Natalia Luera, M.D., Jordi X. Kellogg, M.D., P.C., and David A. Tuning, PAC. ECF No. 20 at 7-14.

**1.   Natalia Luera, M.D.**

Plaintiff argues that the ALJ erred by rejecting opinion evidence from Dr. Luera.  ECF No. 20 at 9-10.  On April 6, 2012, Natalia Luera, M.D., completed a form entitled "Medical Report."  Tr. 615-16.  In the report, Dr. Luera provided the first date she treated Plaintiff as August 21, 2008, and the last date of treatment as April 6, 2012.  Tr. 615.  The report indicates Plaintiff has to lie down during the day between 30 minutes to two hours to relieve her back pain, her prognosis is poor, her chronic pain is unlikely to improve, and she would likely miss four or more days of work per month due to her medical impairments.  Tr. 615-16.  The

_____

[2]Plaintiff lists three additional arguments as "issues:" (1) "the ALJ committed harmful reversible error by repeatedly and erroneously finding Ms. Ruikka was "fixed" after different surgeries and procedures…"; (2) "[t]he ALJ committed harmful reversible error by finding Ms. Ruikka's activities of daily living were inconsistent with a claim of disability"; and (3) the ALJ erred "by calling and paying for a vocational expert," but did not allow the expert to testify. ECF No. 20 at 3.  For clarity of organization, the court addresses these arguments within the appropriate issue analyses, related to medical opinion, credibility, and compliance with the Appeals Council remand order.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

1  report also indicates Plaintiff has experienced these limitations since January 2005.

2  Tr. 616.

3      The ALJ gave little weight to April 2012, Medical Report from Dr. Luera for

4  two reasons:[3]  (1) because Dr. Luera did not treat Plaintiff prior to her date of last

5  insured, and (2) because "the records suggest that Dr. Luera actually treated

6  claimant only on March 2, 2010, and April 2, 2010, for conditions other than her

7  back pain."[4]  Tr. 554.

8      The fact that Dr. Luera did not treat Plaintiff prior to her date of last insured

9  is an improper reason to reject the medical opinion.  Medical reports "containing

10 observations made after the period for disability are relevant to assess the

11 claimant's disability."  *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988) (citing

12 *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); see also *Lingenfelter v.*

13 *Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007) ("reports containing observations

14 made after the period for disability are relevant to assess the claimant's disability");

15 *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).  Because medical reports "are

16 inevitably rendered retrospectively," they "should not be disregarded solely on that

17 basis."  *Smith*, 849 F.2d at 1225; see also *Poe v. Harris*, 644 F.2d 721, 723 n.2 (8th

18 Cir. 1981) (disabling back pain evidence subsequent to last date of eligibility "is

19 pertinent evidence in that it may disclose the severity and continuity of

20 impairments existing before the earning requirement date").  Accordingly, the

21 ALJ's rejection of Dr. Luera's opinion because it was rendered five years after the

22

23      [3]The ALJ noted the form had two different handwriting styles on it and

24 commented that it was "unclear who actually completed the form," but the ALJ

25 stated he would assume the form contained the opinion of Dr. Luera.  Tr. 554.

26      [4]The record contains two chart notes signed by Dr. Luera, from office visits

27 on March 2 and April 2, 2010.  Tr. 624-25.  The reason for both visits was related

28 to menopausal symptoms.  Tr. 624-25.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

expiration of Plaintiff's insured status was not a legally sufficient reason to reject the opinion.

The ALJ also rejected Dr. Luera's opinion because the record revealed only two treatment records signed by Dr. Luera. Tr. 554. The Medical Report dated April 6, 2012, indicates that Dr. Luera's first treatment date for Plaintiff was August 21, 2008, and her last treatment date was April 6, 2012. Tr. 615. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. *See Smolen*, 80 F.3d at 1288. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (*citing Tidwell,* 161 F.3d at 602).

In this case, the ALJ failed to resolve the apparent ambiguity between the stated treatment dates and the lack of records evidencing Dr. Luera's treatment by requesting additional records that reflect Dr. Luera's treatment of Plaintiff, or by investigating the treating relationship between Dr. Luera and David J. Tuning, PA-C, who treated Plaintiff and worked at the same clinic. See Tr. 623-24. Thus, reliance upon this reason for rejecting Dr. Luera's opinion was not a legally sufficient reason to reject the opinion. In sum, the ALJ failed to provide proper reasoning for rejecting Dr. Luera's opinion and, thus, remand is necessary for a proper analysis that includes a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." See *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998).

///

1    **2.    Jordi X. Kellogg, M.D., P.C.**

2    Plaintiff argues that the ALJ erred by giving little weight to Dr. Kellogg's

3    opinion.  ECF No. 20 at 13.  On January 10, 2005, Dr. Kellogg examined Plaintiff

4    and noted that an MRI demonstrated "facet arthropathy at L4-L5 and L5-S1" and

5    also disc desiccation.  Tr. 453.  A myelogram test "did not demonstrate any nerve

6    root compromise in the cervical spine.  In the lumbar spine, facet arthropathy was

7    evident, particularly on the right at L5-S1."  Tr. 452.  On February 24, 2005, Dr.

8    Kellogg diagnosed Plaintiff with L5-S1 discogenic back pain with radiculopathy

9    and recommended surgery.  Tr. 449-50.  After surgery, on March 30, 2005,

10   Plaintiff reported "reduction of her low back pain and resolution of her lower

11   extremity radiculopathy."  Tr. 448.  On June 14, 2005, Plaintiff complained of

12   persistent back pain , and she notified Dr. Kellogg that she had scheduled steroid

13   injections.  Tr. 445-46.  On October 28, 2005, Dr. Kellogg noted that Plaintiff had

14   "undergone epidural steroid injections and has done well."  Tr. 443.

15   On January 18, 2006, Plaintiff called Dr. Kellogg to report new pain.  Tr.

16   442.  On February 10, 2006, Dr. Kellogg saw Plaintiff as a follow up to her March

17   2005, back surgery.  Tr. 439.  During that exam, Dr. Kellogg opined that Plaintiff

18   "is unable to work because of her symptoms and inability to walk for extended

19   periods of time or stand."  Tr. 439.

20   On February 1, 2007, Dr. Kellogg found that Plaintiff's functional

21   impairment was "severe" and interfered with most but not all of her daily

22   activities, and he found she could stand for no longer than 30 minutes and sit for no

23   longer than 40 minutes.  Tr. 499.  On that date, Dr. Kellogg injected Plaintiff with

24   an epidural steroid.  Tr. 498-502.  She had two more injections in the following

25   two months.  Tr. 494-98.  On May 15, 2007, Dr. Kellogg noted that Plaintiff had a

26   "very nice response" to the set of three injections, "initially getting complete

27   relief" but eventually Plaintiff was left with pain at between 6 and 7 out of 10 in

28   intensity.  Tr. 494.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

On June 13, 2007, Dr. Kellogg implanted a temporary spinal cord stimulator, which initially resolved 95% of Plaintiff's pain symptoms, and Dr. Kellogg reported that Plaintiff could "sleep better and walk up stairs and was even doing laundry. All of these activities were nearly impossible for her in the past." Tr. 490. Over the next several months, Dr. Kellogg's notes indicate Plaintiff continued to experience relief from back pain through December 2007, although she developed insomnia, and her migraine headaches persisted. Tr. 481-90.

The ALJ gave little weight to Dr. Kellogg's February 10, 2006, opinion that Plaintiff was unable to work for a single reason: because "it was given prior to claimant's second surgery in March, 2006, which [Dr. Kellogg] noted resulted in significant improvement of her condition." Tr. 553. A medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson,* 359 F.3d at 1195. Likewise, an opinion may be rejected where there is incongruity between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the record does not support the ALJ's conclusion. While the records reveal that immediately following Plaintiff's 2006 surgery, Plaintiff's condition was "significantly better," (Tr. 438), subsequent treatment notes chronicle Plaintiff's deteriorating condition. Tr. 676-726. "A single current examination may not always properly describe an individual's sustained ability to function. It should be viewed as one point in time in the longitudinal picture of an individual impairment." *DeLorme v. Sullivan*, 924 F.2d 841, 851 (9th Cir. 1991), quoting SSR 83-15. In evaluating whether the claimant satisfies the disability criteria, the ALJ must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). "Occasional symptom-free periods – and even the sporadic ability to work– are not inconsistent with disability." *Lester*, 81 F.3d at 833.

The ALJ's reason for giving little weight to Dr. Kellogg's opinion ignores

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

the undisputed fact established in the record that Plaintiff's second surgery provided only temporary relief.  Dr. Kellogg's opinion that Plaintiff's back impairment left her unable to sustain work was supported by the record as a whole.  An ALJ may not consider only those portions of the record that favor his or her ultimate conclusion.  See *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting  evidence"); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") .

Finally, the ALJ is not required to discuss each item of evidence, but the record should indicate that all evidence presented was considered.  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  In this case, it is not apparent that the ALJ adequately considered all of Plaintiff's medical records.  For example, the ALJ fails to discuss and analyze the records from Plaintiff's 2011-2012 medical providers including Gregory Gullo, M.D., P.C., Gus G. Varnavas, M.D., and Henry Y. Kim, M.D.  Tr. 676-82; 694-726.  These medical chart notes reveal Plaintiff's consistent reports of significant pain, and detail the multiple procedures she endured in an attempt to find lasting relief for the pain associated with her back impairment.  As noted above, medical records that post-date the date of last insured are relevant to evaluating Plaintiff's back impairment.  *See Lester,*81 F.3d at 832; *Smith*, 849 F.2d at 1225; *see also Poe*, 644 F.2d at 723 n.2 (*Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (that a doctor did not examine the claimant until two years after the expiration of her insured status and then rendered an opinion about an injury which occurred five years earlier "does not render his medical opinion incompetent or irrelevant");

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

*Wooldridge v. Secretary of HHS*, 816 F.2d 157, 160  (4th Cir. 1987) (medical evaluations made two years subsequent to expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability).

In rejecting Dr. Kellogg's opinion, the ALJ improperly relied upon select examination notes that favored his conclusion, and failed to consider the medical record as a whole.  As a result, the record does not support the ALJ's determination, and on remand, the ALJ should reconsider Dr. Kellogg's opinion and provide a proper analysis.

### 3.    David J. Tuning, PAC

Plaintiff contends that the ALJ erred by rejecting the opinion of Mr. Tuning, PAC.  ECF No. 20 at 7-9.  Mr. Tuning began treating Plaintiff in August 2008, and at that visit, he indicated he requested all Plaintiff's records from her previous provider, Gregory Gullo, M.D., P.C.  Tr. 634.  The record indicates Mr. Tuning noted Plaintiff's scars corroborated her recitation of multiple surgeries, and he stated that he could feel in her back the implanted nerve stimulator device.  Tr. 634.  On October 2, 2008, Mr. Tuning saw Plaintiff and indicated by that time, he had "copies of lots of her old records and I gave them to her to hand carry along" to the Pain Management Clinic.  Tr. 633.  Mr. Tuning opined "at this point I say she is definitely totally disabled and unable to work and [her husband] does need to help her."  Tr. 633.

In November 2009, Mr. Tuning noted that Plaintiff had been attending the Pain Clinic, but she did not experience lasting relief.  Tr. 628.  On February 15, 2010, Plaintiff was again experiencing back pain, one month after surgery.  Tr. 626.  She was still experiencing pain in August, and December 2011.  Tr. 622-23. In January 2012, Plaintiff continued to complain of low back pain and migraine headaches, and was considering removal of the hardware in her back.  Tr. 620.

The ALJ gave little weight to Mr. Tuning's October 2008, opinion that

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

Plaintiff was disabled for two reasons: (1) "he did not report any objective findings to support his opinion"; and (2) no evidence existed that Mr. Tuning examined Plaintiff in October 2008, or at her previous visit on August 21, 2008. Tr. 553. An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195.

The ALJ's reasons for rejecting Mr. Tuning's medical opinion that Plaintiff was disabled are not supported by the record. First, on October 2, 2008, Mr. Tuning indicated that he had obtained "lots of" Plaintiff's medical records. Tr. 633. He reported these records included "lots of x-rays and MR scans." Tr. 633. It is reasonable to infer Mr. Tuning reviewed the records and relied upon the objective findings therein in making his determination about Plaintiff's ability to work. The ALJ's conclusion that Mr. Tuning provided an opinion without an objective basis is unsupported by the record.

The ALJ's second reason for rejecting Mr. Tuning's opinion was that no evidence existed proving that Mr. Tuning examined Plaintiff on either August 21, 2008, or October 2, 2008. This reason is also contradicted by the record. Mr. Tuning's notes from the first visit on August 21, 2008, explicitly indicate that he viewed Plaintiff's scars and felt the implanted nerve stimulator in her back. Tr. 634. These notes indicate that Mr. Tuning examined Plaintiff, and the ALJ's contrary conclusion is not supported by the record. Whether Mr. Tuning examined Plaintiff on October 2, 2008, is not a material issue. At that visit, Mr. Tuning had "lots" of Plaintiff's old records including x-rays and MR reports. Tr. 633. His prior exam and possession of Plaintiff's medical records were a sufficient basis for his opinion. As such, the ALJ improperly rejected Mr. Tuning's opinion, because his reasons are unsupported by the record. On remand, Mr. Tuning's opinion must be reconsidered.

///

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

**B.      Credibility**

Plaintiff contends that the ALJ erred by finding Plaintiff only partially credible.  ECF No. 20 at 22-23.  The ALJ is responsible for determining credibility.  *Andrews*, 53 F.3d at 1039.  Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester*, 81 F.3d at 834.  The ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick,* 157 F.3d at 722, quoting *Lester*, 81 F.3d at 834.  If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *See, e.g., Fair v. Bowen,* 885 F.2d 597, 602-04 (9th Cir. 1989); *Bunnell*, 947 F.2d at 346-47.  Generally, when determining credibility, an ALJ properly considers whether medication effectively controls the plaintiff's symptoms.  *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled by medication are not deemed disabling).

The ALJ found that Plaintiff's allegations of disabling back pain were inconsistent with "medical evidence showing her various treatment modalities

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

including two surgeries have resulted in improvement of her overall symptoms." Tr. 551.  In essence, the ALJ relies upon several instances during which Plaintiff attempted a treatment, enjoyed temporary relief, only to have the pain eventually return.  Tr. 551-52.

In this case, the facts reveal that multiple attempts to relieve the pain from Plaintiff's back impairment, including physical therapy, chiropractic adjustments, spinal injections, spinal fusion operations, and the implantation and later removal of a nerve stimulation device, were all ineffective in controlling Plaintiff's symptoms for more than a brief period.  The ALJ's suggestion that Plaintiff's sporadic and transient relief from pain diminishes her credibility is contrary to the regulations and case law.  In short, Plaintiff's medical records establish none of the increasingly intensive treatments were effective in the long run at controlling her symptoms, and the ALJ's conclusion to the contrary is unsupported by the record.

The ALJ also found Plaintiff had little credibility because her pain complaints were inconsistent with her daily activity level.  Tr. 552.  In determining a claimant's credibility, an ALJ may consider, among other factors, inconsistencies between the claimant's testimony and the claimant's daily activities, conduct and/or work record.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ found Plaintiff's daily activities, as reported by Mr. Ruikka in the Third Party Report, that undercut her credibility included house cleaning, tending chickens, walking the dogs, laundry, cooking and running errands.  Tr. 552.  However, the ALJ relied upon only selected portions of Mr. Ruikka's statements in the Third Party Report.  When considered in its entirety, the Report fails to support the ALJ's reasoning.

For example, Mr. Ruikka indicates that Plaintiff "can't lift heavy items, can't exercise, can't sit or stand for long periods, has problems vacuuming, can't do yard work or gardening," Plaintiff complained that the waistband of her clothing pressed against sore spots on her back, and she awakened with headaches

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

and backaches.  Tr. 155.  Mr. Ruikka also reported that Plaintiff has to take breaks in order to prepare a complete meal, pain restricted her activities, she can walk for fifteen minutes before she must rest, and she usually required an hour of rest before she can resume any activity.  Tr. 156; 158A.  In sum, substantial evidence does not exist to support the ALJ's finding that Plaintiff lacked credibility, based upon Mr. Ruikka's Third Party Report.  As noted above, an ALJ may not consider only those portions of the record that favor his or her ultimate conclusion.  *See Day*, 522 F.2d at 1156 (ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); *Whitney*, 695 F.2d at 788 (ALJ may not ignore evidence that suggests opposite conclusion).

Finally, the ALJ concluded that Plaintiff's claims that she had to lie down several times per day were not credible because at the time, she was obtaining her real estate license:

> The claimant testified at the current hearing that she needed to lie down multiple times per day prior to her date last insured of September 30, 2005.  However, this would not have been possible at the same time she was going to school to obtain her real estate license and working as a realtor.

Tr. 552.  The ALJ's assumption that Plaintiff had to physically attend classes at a brick-and-mortar school is directly contradicted by the record.  At the May 12, 2008, hearing, Plaintiff testified that she took her real estate classes "at home on the computer."  Tr. 528.   As such, the record does not support the ALJ's conclusion that Plaintiff's claim she needed lie down during the day was not credible.  Because none of the ALJ's reasons for rejecting Plaintiff's credibility were supported by the record, Plaintiff's credibility must be reconsidered on remand.

## C.    Lay Witness Testimony

Plaintiff contends that the ALJ erred by giving little weight to the lay

witness testimony from her husband, Michael Ruikka in the Third Party Function Report. ECF No. 20 at 23. As discussed in the credibility analysis, Mr. Ruikka completed a Third Party Function Report in which he provided information about Plaintiff's limitations due to her symptoms. See Tr. 154-60. The ALJ gave this report little weight "because it was made prior to the Plaintiff's surgeries in May 2005 and February 2006 which resulted in overall improvement of her condition." Tr. 553.

As discussed in depth above, the ALJ's conclusion that Plaintiff's surgeries remedied her back impairment is not supported by the record. Moreover, the ALJ adopted irreconcilable positions about the Third Party Report. On the one hand, the ALJ relied upon the report to discredit Plaintiff's testimony, and on the other hand, the ALJ found the report deserved little weight. Tr. 552-53. The ALJ's reasoning relating to the lay witness testimony in the Third Party Report is not supported by the record, and this evidence must be reconsidered on remand.

**D.    Compliance with Appeals Council Remand Order**

The Plaintiff argues that the ALJ failed to fully comply with the Appeals Council remand order. ECF No. 20 at 14-15. The remand order directed the ALJ to "obtain additional evidence" about Plaintiff's obesity and other impairments, reconsider Plaintiff's credibility, reconsider Mr. Ruikka's opinion, and reconsider Plaintiff's maximum RFC. Tr. 559. Finally, the Appeals Council ordered that "if warranted by the expanded record, [the ALJ will] obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Tr. 560.

The ALJ's second opinion fails to full comply with the remand order. For example, in the second opinion, the ALJ added a new paragraph simply acknowledging the cumulative effect of obesity on other physical impairments. Tr. 548. The ALJ summarily concluded that Plaintiff's obesity, in combination with her back impairment, did not meet or equal a Listing:

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> [E]ven considering any exacerbating effect due to obesity, the claimant's spinal impairment did not meet the requirements of Listing 1.04 during the period at issue. The objective evidence has revealed the presence of lumbar degenerative disc disease[5] with some limitation in range of motion. However, during the period at issue, there was no objective evidence of nerve root compression or motor loss accompanied by sensory or reflex loss.[6]

Tr. 548. The ALJ concluded that despite Plaintiff's obesity and back pain, the evidence revealed she "was able to ambulate effectively during the period at issue." Tr. 548.

The ALJ cited two chart notes to support this conclusion that Plaintiff was

_____

[5]The court notes here the ALJ acknowledged Plaintiff's lumbar degenerative disc disease, but inexplicably failed to include this as a severe impairment at Step Two. Tr. 546.

[6]This assertion is not supported by the record. The ALJ failed to address and resolve the ambiguity presented in Dr. Kellogg's notes regarding Plaintiff's radiculopathy. On October 28, 2005, Dr. Kellogg noted that Plaintiff "has no radiculopathy." Tr. 443. Yet less than four months later, on February 10, 2006, after viewing a recent MRI report, Dr. Kellogg diagnosed Plaintiff with "L5-S1 spondylosis with radiculopathy." Tr. 441. That same month, on February 28, 2006, Dr. Kellogg performed surgery on Plaintiff's spine and discovered Plaintiff's "nerve root was finally markedly compressed, particularly on the right side as well as on the left side, and the right S1 nerve root found to be markedly erythematous." Tr. 435. On remand, the ALJ should address and resolve the ambiguity, as well as obtain an opinion from either Plaintiff's treating neurosurgeon or a consultative physician qualified in this specialty as to whether Plaintiff's degenerative disc disease met, or in combination with her other impairments equaled, a Listing prior to September 30, 2005, in light of her spondylosis and radiculopathy.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 18

1    able to walk "effectively." The first note documents Plaintiff's March 15, 2005,

2    office visit with Steven Matous, M.D., that contains the notation under review of

3    symptoms: "normal gait." Tr. 376. However, the office visit was simply a

4    "surgical consult" in preparation for Plaintiff's impending lumbar vertebral

5    surgery, and the notes do not reflect a full exam was performed. Tr. 373-75.

6    Notably, this document lacks an explanation of why lumbar vertebral surgery for

7    Plaintiff was deemed necessary, nor does it provide a detailed list of Plaintiff's

8    existing limitations or symptoms. Tr. 373-75.

9        The second document cited by the ALJ is a September 22, 2005, chart note

10   from an office visit with Roy A. Slack, M.D. Tr. 431-32. At this office visit,

11   Plaintiff rated her back pain as between a seven and eight out of ten. Tr. 431.

12   During this visit, Dr. Slack provided two epidural steroid injections into Plaintiff's

13   back. Tr. 431. The notes reflect that after these injections, in a section clearly

14   titled "**POST BLOCK**," the chart note indicated Plaintiff was "ambulating without

15   difficulty." Tr. 431. The note contains no information about Plaintiff's ability to

16   walk immediately prior the two injections. Tr. 431.

17       The ALJ's reliance upon these two chart notes to support the conclusion that

18   Plaintiff was able to walk without problems from her back impairment combined

19   with her obesity is untenable. When examined in full, these records reveal that

20   Plaintiff experienced such difficulty in daily living that she required surgery, and

21   later, spinal steroid injections to find pain relief. Finding otherwise can be

22   accomplished only by considering certain isolated evidence and ignoring the

23   remainder of the record. *See Day*, 522 F.2d at 1156 (ALJ is not permitted to reach

24   a conclusion "simply by isolating a specific quantum of supporting evidence").

25       The Appeals Council also ordered the ALJ to reconsider Plaintiff's

26   credibility. Tr. 559. The ALJ's second credibility analysis is not significantly

27   different from the first. Tr. 23-25; 550-53. As analyzed above, the ALJ's second

28   credibility determination remains insufficient. Similarly, the remand order also

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 19

directed the ALJ to reconsider Mr. Ruikka's testimony.  While the ALJ supplemented this analysis by providing citations to the record, as explained above, his second analysis remains insufficient.

Finally, the remand order directed that if the "expanded record" warranted, the ALJ should obtain supplemental evidence "to clarify the effect of the assessed limitations on the claimant's occupational base."  Tr. 560.   In the second opinion, the ALJ determined Plaintiff's RFC was identical to the previously assigned RFC. Tr. 22; 548.  As a result, despite the presence of a vocational expert at the second hearing, the ALJ did not ask the expert to testify.  Tr. 729-42.

While the ALJ failed to fully comply with the Appeals Council remand order, this court may not award benefits punitively.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138 (9th Cir 2011).  A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.  *Id; see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005) ("Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability.").

**E.    Remand to a New ALJ**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman*, 211 F.3d at 1178.  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the ALJ's decision.  *Strauss*, 635 F3d at 1138. Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  *See Harman*, 211 F.3d at 1179; *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).

In this case, remand to a new ALJ is warranted by the circumstances.  "As a general matter, courts have held that whether a case is remanded to a different ALJ

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 20

is a decision for the Commissioner to make." *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir.1993).  However, in certain circumstances, courts have ordered or recommend that the Commissioner assign a case to a different ALJ on remand. For example, the Second Circuit remanded to a new ALJ when the original ALJ failed to adequately consider the medical evidence. *Kolodnay v. Schweiker*, 680 F.2d 878, 879-80 (2d Cir.1982).  The Eleventh Circuit also remanded to a new ALJ where the original ALJ failed to support his findings with evidence, and the court concluded that this failure reflected that "the process was compromised." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir.1996).

The Ninth Circuit remanded to a new ALJ after explicitly finding that no evidence existed that the ALJ was biased, but where the ALJ indicated he mistrusted the evaluations of medical specialists who performed only consultative examinations.  *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) ("We remand with instructions that the matter be assigned to a different ALJ. We do not, however, believe that the ALJ is biased against Reed. We therefore reverse and remand to the district court for remand to the Social Security Administration with instructions that the matter be assigned to a different ALJ for a new determination of Reed's disability status.").

Additional factors the court considers in determining when to remand to a new ALJ include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; and (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Sutherland v. Barnhart*, 322 F.Supp.2d 282, (E.D. NY 2004); see also 20 C.F.R. § 404.940.

In this case, it is apparent that the ALJ applied the inappropriate legal standards related to whether Plaintiff's symptoms from her severe back impairment

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 21

were controlled and thus enabled her to sustain full time work.  It is not clear that on a third hearing of this case, the ALJ would apply the correct the standard, particularly in light of the ALJ's failure to fully comply with the previous order from the Appeals Council.  Moreover, the ALJ has exhibited a disconcerting pattern of isolating evidence that favors his conclusions, while ignoring evidence that contradicts his conclusions.

As of the date of this opinion, Plaintiff has waited for more than nine years for a final decision on her application for disability benefits.  The court finds that the present case should not be considered a third time by an ALJ who has twice ruled that Plaintiff is not disabled, and has provided improper analyses related to the medical opinions, Plaintiff's credibility, lay witness evidence, and who failed to call a medical expert at both administrative hearings, and a vocational expert at the second administrative hearing.  This case should be heard by a new ALJ on remand.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the new ALJ should reconsider Plaintiff's severe impairments at Step Two, all medical opinion evidence, Plaintiff's credibility, lay witness testimony, and Plaintiff's maximum RFC.  On remand, the new ALJ should also obtain testimony from an orthopedic surgeon medical expert, and a vocational expert. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 20,** is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 26,** is **DENIED**.

3.    An application for attorney fees may be filed by separate motion.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 22

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED February 20, 2014.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 23